UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER V.,

                    Plaintiff,

v.                                      5:24-CV-01418
                                       (MAD/ML)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                  OF COUNSEL:

HILLER COMERFORD           JEANNE E. MURRAY, ESQ.
INJURY & DISABILITY LAW     JUSTIN M. GOLDSTEIN, ESQ.
 *Attorneys for Plaintiff*
6000 North Bailey Avenue - Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.    KRISTINA D. COHN, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

     Plaintiff Christopher V. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1.)  This matter was referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. Nos. 3,4.)  This case has proceeded in accordance with General Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 12, 13.) For the reasons set forth below, this Court recommends that the District Court grant Defendant's motion for judgment on the pleadings and affirm the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On May 9, 2022, Plaintiff protectively filed an application for DIB, alleging disability dating from February 11, 2020. (Administrative Transcript ("T.") 190-192, 195-196.) His application was denied initially on September 30, 2022, and his request for administrative reconsideration was denied on January 23, 2023. (T. 86-116, 128, 136.) Plaintiff's request for a hearing was granted. (T. 139-140, 167-182.) On January 8, 2024, Plaintiff and vocational expert ("VE") Robert Baker testified by telephone before Administrative Law Judge ("ALJ") Kenneth Theurer. (T. 30-53.)

The ALJ issued an unfavorable decision on January 22, 2024. (T. 12-29.) The Appeals Council denied Plaintiff's request for review on September 25, 2024. (T. 1-6.) Plaintiff commenced this proceeding on November 21, 2024 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts

2

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685

3

F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.    FACTS

As of the date of the ALJ's decision, Plaintiff was 41 years old. (T. 195.) He resided with

his wife and six year old son. (T. 36.) As a student, he received special education assistance due

to a learning disability before graduating high school and attending a year of college. (T. 36, 61,

294-297.) His work history includes positions as a security guard, janitor, assembly line worker

at a meat packing facility, and retail associate at a department store. (T. 36-42, 247-254.) He

testified that he had not worked since his first knee surgery in 2020. (T. 42, 383.)

Plaintiff reported that he suffered arthritic knee pain despite multiple surgeries including

bilateral knee replacement. (T. 332, 422, 471-472.) He has a history of chronic lower back pain

that he described as radiating up to the middle of his back and down to his legs and recently

developed neck pain that he described as radiating down his right arm. (T. 471, 1014.) Plaintiff

testified that the constant pain from these physical impairments made it difficult to sit, stand, or

walk for prolonged periods, and interfered with his ability to focus. (T. 47, 337, 471, 826.)

The record includes Plaintiff's relevant medical history. Rather than summarizing the

records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's

arguments.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements

through September 30, 2025. (T. 17.)  Based upon his review of the administrative record, the

ALJ found that Plaintiff had not engaged in substantial gainful activity after the amended alleged

onset date of May 9, 2022. (T. 17, 35.)  At step two, the ALJ found that Plaintiff has the

following severe impairments: "post bilateral knee replacement, lumbar spondylosis and

radiculopathy, disorder of the cervical spine, seizure disorder, and obesity." (T. 18-19.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or

in combination did not meet or medically equal the severity of a listed impairment, including

Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), Listing

1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), Listing 1.18

(Abnormality of a major joint in any extremity), and Listing 11.02 (Epilepsy). (T. 19.)  The ALJ

also considered Plaintiff's obesity in combination with all his other impairments. (*Id*.)

Next, the ALJ found that Plaintiff could perform less than the full range of sedentary

work. (T. 23-30.)  Specifically, the ALJ found that Plaintiff:

> can occasionally lift and carry ten pounds, sit for approximately six hours, and
> stand or walk for approximately two hours in an eight-hour day with normal
> breaks.  He can never climb ladders, ropes, or scaffolds but can occasionally
> climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  [Plaintiff] can
> also occasionally reach overhead.  He should not work at unprotected heights or
> in conjunction with dangerous machinery.  He also should not operate a motor
> vehicle.

(T. 19.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's

symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

404.1529" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that he

considered opinion evidence and prior administrative medical findings in accordance with 20

C.F.R. §§ 404.1520c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding

pain, symptoms, and functional limitations raised during the hearing and in the overall

administrative record and found them "not entirely consistent with the medical evidence and

other evidence of record." (T. 23.)

At step four, the ALJ found that Plaintiff is unable to perform any of his past relevant

work. (T. 23.)  Relying on the VE testimony, the ALJ next found that there are jobs existing in

significant numbers in the national economy that Plaintiff can perform. (T. 24-25.)  Accordingly,

the ALJ found that Plaintiff has not been disabled from his amended alleged onset date of May 9,

2022 through the date of the ALJ's decision. (T. 25.)

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ improperly based his RFC determination on stale medical

opinions and his own lay evaluation of raw medical evidence. (Dkt. No. 9 at 11-15.)  In

particular, Plaintiff contends that the ALJ relied on three medical opinions that all pre-dated a

deterioration of his cervical spine that required surgery in December 2023 and then substituted

his lay assessment of the more recent evidence for qualified medical opinion. (*Id*.)  In addition,

Plaintiff contends that the ALJ failed to resolve an apparent conflict between the Dictionary of

Occupational Titles ("DOT") and the January 8, 2024 hearing testimony of VE Robert Baker.

(Dkt. No. 9 at 15-21.)  The Commissioner contends that the ALJ's analysis of the medical

opinion evidence, Plaintiff's testimony, and the ultimate disability determination were supported

by substantial evidence, and that the ALJ adequately resolved any potential conflicts in the VE

testimony. (Dkt. No. 12 at 6-17.)

For the reasons set forth below, this Court recommends that the District Court deny

Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the

pleadings, and affirm the Commissioner's decision.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC

is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No.

3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v.*

*Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v.*

*Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018);

*Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F.

Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts,

diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective

symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.

*See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F.

Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL

587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An

ALJ must specify the functions a plaintiff is capable of performing and may not simply make

conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241,

267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588);

*LaPorta*, 737 F. Supp. at 183; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016);

*Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions

---

[2]  Plaintiff's applications were protectively filed on May 9, 2022. (T. 190-192, 195-196.) Thus, the new regulations apply in this case.

are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

**B.      The ALJ Did Not Rely on Stale Opinion Evidence or Substitute His Lay Opinion for Qualified Medical Opinion.**

As part of the RFC analysis, the ALJ found the opinions of Dr. J. Lawrence and Dr. J. Koenig, state agency consultants who reviewed Plaintiff's then-current medical records, to be

"partially persuasive." (T. 21, 93-96, 109-112.)  On September 22, 2022, Dr. Lawrence opined

that Plaintiff could occasionally lift and/or carry up to twenty pounds and frequently lift or carry

up to ten pounds; could stand and/or walk for a total of four hours over the course of an eight

hour workday; and could sit for about six hours total over the same period, with normal breaks.

(T. 93-94.)  In Dr. Lawrence's opinion, Plaintiff could only occasionally climb ramps, stairs,

ladders, ropes or scaffolds and could only occasionally balance, stoop, kneel, crouch or crawl.

(T. 94.)  Addressing environmental limitations, Dr. Lawrence opined that Plaintiff should

"[a]void even moderate exposure" to workplace hazards such as machinery or heights. (T. 95.)

On June 7, 2021, Dr. Koenig reviewed Plaintiff's medical records in response to his

reconsideration request. (T. 109-112.)  Dr. Koenig largely affirmed Dr. Lawrence's opinion but

found that Plaintiff was capable of standing and walking up to about six hours over the course of

the workday. (T. 109.)

The ALJ found the Lawrence and Koenig opinions to be "partially persuasive" because

they were generally consistent with one another and supported by a narrative explanation that

cited to the clinical and diagnostic findings relied upon by the consultants. (T. 21.)  Still, the ALJ

found that subsequent medical and testimonial evidence showed greater restrictions in Plaintiff's

ability to stand and walk for extended periods or to reach overhead than those opined by the non-

examining physicians. (T. 21, 43-44, 242, 300, 818-819.)  The ALJ found the Lawrence and

Koenig opinions to be indicative of an ability to perform light work but concluded that the

broader record was more consistent with sedentary jobs. (T. 21-22.)

The ALJ also considered Dr. Felix Oduwa's September 2, 2022 consultative physical

examination report and accompanying opinion. (T. 21-22, 471-474.)  Dr. Oduwa opined that

Plaintiff should not drive and had "moderate" limitations for squatting, repetitive bending,

11

prolonged walking, and prolonged standing. (T. 474.)  The ALJ noted that Dr. Oduwa's

consultative examination results were "mostly normal," but that his opined restrictions to mostly

sedentary work were more consistent with Plaintiff's treatment history for lower back pain and

recent bilateral knee replacement, as well as Plaintiff's continued difficulty walking despite

treatment. (T. 21, 320, 323, 462, 473-474, 611, 828.)  In particular, the ALJ was persuaded by

Dr. Oduwa's opinion regarding Plaintiff's postural limitations, but the ALJ added a restriction to

only occasional overhead reaching in light of Plaintiff's own description of pain when raising his

hands over his head. (T. 22, 242, 473-474.)

The most recent medical opinion in the record was that of Nurse Practitioner ("NP")

Clarey, who prepared a Medical Source Statement on November 21, 2023. (T. 866-868.)  The

record documents Plaintiff's treatment relationship with NP Clarey dating back to at least

December 2022. (T. 925.)  She opined that Plaintiff could sit for no more than twenty minutes at

one time and less than two hours over the course of a workday, and had identical time limits on

his ability to stand or walk. (*Id*.)  In addition, NP Clarey opined that Plaintiff would require a job

that permitted him to shift positions at will from sitting, standing, and walking, would need to

take an unscheduled break every twenty to thirty minutes, and was likely to be absent from work

more than four days per month. (T. 866-868.)  Overall, NP Clarey opined that Plaintiff was

incapable of even low stress jobs due to his physical impairments. (T. 866.)

The ALJ found NP Clarey's opinion to be unpersuasive due to its lack of support in her

own treatment notes and inconsistency with the broader medical record. (T. 23.)  Plaintiff does

not argue that the ALJ should have adopted NP Clarey's highly restrictive opinion. (Dkt. No. 9 at

5-6, 13.)  Rather, Plaintiff argues that Plaintiff's December 2023 cervical spine discectomy and

fusion surgery demonstrates a deterioration in Plaintiff's overall health that rendered all of the

medical opinion evidence in the record stale, and required further development of the record. (*Id*. at 11-15.)

A medical opinion can become stale if there is a deterioration in the claimant's condition or functioning after the time that the relevant opinion was rendered. *See Maxwell H. v. Comm'r of Soc. Sec.*, 1:19-CV-0148 (LEK/CFH), 2020 WL 1187610, at *5 (N.D.N.Y. Mar. 12, 2020). However, the mere fact that an opinion was rendered a significant time prior to the ALJ's decision is not alone dispositive of staleness; rather, the pivotal question is whether there was a material change in the claimant's condition that would impact the validity of the opinion. *Maxwell H*, 2020 WL 1187610, at *5; *see also Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (finding that opinion was not stale because the additional evidence from after that opinion did not raise doubts as to the opinion's reliability). "[A] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Ruth M. v. Saul*, No. 5:18-CV-01006 (FJS/CFH), 2020 WL 819323, at *8 (N.D.N.Y. Feb. 19, 2020), *rep't and rec. adopted*, 2020 WL 1245404 (N.D.N.Y. Mar. 16, 2020). Instead, there must be a "meaningful change" in plaintiff's condition after the opinion was rendered. *Lamar v. Comm'r of Soc. Sec.*, No. 18-CV-00829 (JJM), 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020).

"Courts routinely decline to remand based on reliance on an allegedly stale consultative opinion where the ALJ reconciled the examiner's findings with the claimant's subsequent treatment developments and additional limitations." *See Leanne S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1447 (CFH), 2022 WL 4448245, at *11 (N.D.N.Y. Sept. 23, 2022) (quoting *Rodriguez v. Kijakazi*, No. 21-CV-2358 (JCM), 2022 WL 3211684, at *15 (S.D.N.Y. Aug. 9, 2022)); *see also Jeffery M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-435 (TJM), 2020 WL 3637646, at *8 (N.D.N.Y. July 6, 2020) (finding that ALJ had not relied on "stale" portions of consultative

examination opinion where ALJ acknowledged change in plaintiff's overall condition, cited

medical evidence that addressed those changes, and relied on those portions of the opinion that

were consistent with the longitudinal medical record).  That is precisely what the ALJ did here

by discussing Plaintiff's December 2023 cervical spine surgery, the largely normal pre-operative

assessments, and Plaintiff's positive response during post-surgery follow-up appointments that

took place just prior to Plaintiff's January 2024 hearing. (T. 21, 931, 1011, 1069-1070, 1088.)

The ALJ's conclusions regarding Plaintiff's neck surgery are consistent with this Court's

searching review of the record.  Treatment notes indicate that Plaintiff's physicians elected to

proceed with surgery to address long-standing concerns with cervical cord compression that

appeared more pronounced in August 2023 MRI results. (T. 907, 917, 1043, 1070.)  Surgery was

delayed until December 2023 to allow Plaintiff an opportunity to lose weight and reduce the risk

of surgical complications. (T. 870, 915.)  During this interim, physical examinations of Plaintiff

do not show a readily observable deterioration in Plaintiff's functional limitations, with

functional results similar to Dr. Oduwa's September 2022 report. (T. 473-474, 1011-12, 1069-70,

1088.)  For example, functional evaluations in December 2022 and December 2023 describe

Plaintiff as close to full strength in the upper and lower extremities, with full range of motion in

his joints, and good balance despite some gait difficulties. (T. 21, 925-926, 1011-1012, 1069-

1070.)

By relying on these professional assessments of Plaintiff's functional limitations,

including physician-reviewed imaging reports, the ALJ did not impermissibly substitute his lay

opinion for qualified medical opinion.  *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109

(2d Cir. 2020) (summary order) (although there was no medical opinion providing the specific

restrictions reflected in the ALJ's RFC determination, such evidence is not required when the

record contains sufficient evidence from which an ALJ can assess the plaintiff's RFC); *Ramsey v. Comm'r of Soc. Sec.,* 830 F. App'x 37, 39 (2d Cir. 2020) (summary order) (ALJ did not rely on lay opinion where he properly considered medical opinions and medical professionals' notes in formulating RFC).

In addition, the ALJ's rejection of portions of the Lawrence, Koenig, and Oduwa opinions was generally based on the ALJ crediting Plaintiff's subjective descriptions[3] of his functional limitations in his application and hearing testimony, and thus restricting Plaintiff to sedentary rather than light work and limiting Plaintiff to occasional overhead reaching. (T. 21-22, 43-47, 242.)  Such exercise of discretion does not require remand.  *See Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019) ("There is nothing improper about an ALJ considering medical opinion evidence that assesses, say, few or no exertional limitations and then relying in part on the combined force of other record evidence, such as a claimant's subjective testimony, to nevertheless choose to assign certain limitations that result in a more restrictive RFC finding."); *Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) (finding no grounds for remand where ALJ credited portions of Plaintiff's testimony in formulating RFC that was more restrictive than medical opinion evidence.)

The record before this Court establishes that the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and hearing testimony by placing the greatest reliance on that evidence that he deemed most consistent with Plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting

---

[3] This Court notes that Plaintiff's January 2024 hearing testimony regarding his recent cervical spine surgery and resulting physical functional limitations came entirely in response to the ALJ's questions, because Plaintiff's non-attorney representative declined to ask him any questions. (T. 43-45, 47.)

medical evidence and plaintiff's testimony and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). "There is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety." *Alexandrea R.R. v. Berryhill*, No. 15-CV-756 (FPG), 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019). Rather, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." *Id.* In doing so, the "ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," like Dr. Lawrence, Dr. Koenig, and Dr. Okuwa, "since such consultants are deemed to be qualified experts in the field of social security disability." *Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-1235 (GTS/WBC), 2016 WL 7971330, at *7 (N.D.N.Y. Dec. 29, 2016), *rep't. & rec. adopted*, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) (collecting cases).

At best, Plaintiff's challenges to the ALJ's assessment of his pain and other symptoms and the relevant medical opinion evidence are "premised upon a disagreement over how the ALJ resolved arguably conflicting evidence." *See Kimball v. Comm'r of Soc. Sec.*, No. 6:14-CV-0698 (LEK/ATB), 2015 WL 4251163, at *9 (N.D.N.Y. July 13, 2015). This Court will not reweigh the evidence presented to the ALJ. *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court

must affirm [his] decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)), *rep't and rec. adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

In light of the ALJ's thorough analysis, this Court concludes that his RFC determination that Plaintiff could perform less than the full range of sedentary work was supported by substantial evidence, as summarized above, and does not present grounds for remand.

## VII.    CONFLICTS BETWEEN VE TESTIMONY AND THE DOT.

### A.    Legal Standard

An ALJ may engage a vocational expert to opine on the jobs a hypothetical person of the claimant's age, education, and RFC could perform in the national economy.  20 C.F.R. § 404.1560(b)(2) ("a vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work"); *accord Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986) ("If nonexertional limitations significantly diminish [claimant]'s ability to perform the full range of 'light work,' then the ALJ should require the Secretary to present either the testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations.").

When assessing the requirements of a particular occupation, an ALJ should primarily rely upon the DOT but may also use VE testimony to resolve more complex vocational issues.  *See* SSR 00-4p, *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and*

*Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704 (December 4, 2000).  The Second Circuit has held SSR 00-4p "requires the Commissioner to 'obtain a reasonable explanation' for any 'apparent' — even if non-obvious — conflict between the [DOT] and a vocational expert's testimony." *Lockwood v. Commissioner*, 914 F.3d 87, 92 (2d Cir. 2019); *see also Brault v. Commissioner*, 683 F.3d 443, 446 (2d Cir. 2012) ("a VE whose evidence conflicts with the DOT must provide a reasonable explanation to the ALJ for the conflict.").  In *Lockwood*, the VE testified that a claimant who was unable to perform any overhead reaching could still perform a number of occupations requiring occasional or frequent reaching under the DOT.  The Second Circuit required remand, because the ALJ's questioning of the VE did not resolve this apparent conflict.  *Id.* at 92-93.

### B.    The ALJ Adequately Resolved the Conflict Between the VE Testimony and the DOT.

In this case, the VE testified that an individual with Plaintiff's RFC, including the restriction to occasional overhead reaching, could perform the representative tasks of charge-account clerk,[4] parimutuel-ticket checker,[5] and call-out operator.[6] (T. 24, 50-52.)  In response to questioning from Plaintiff's non-attorney representative, the VE further testified that there were "definitely more jobs" that would be compatible with Plaintiff's RFC, but did not provide specific examples. (T. 52.)

---

[4] A "charge-account clerk" assists customers applying for credit cards or similar charge accounts.  See DOT, 205.367-014, 1991 WL 671715.

[5] A "parimutuel-ticket checker" counts and records the number of bettors' tickets cashed at a race track in order to verify cashier records. See DOT, 1991 WL 671989.

[6] A "call-out operator" is a clerical position that compiles credit information, such as account status, personal references, and bank accounts.  See DOT, 1991 WL 672186.

According to the DOT, the position of charge-account clerk requires frequent reaching and the job of parimutuel-ticket checker requires constant reaching. *See* DOT 205.367-014 Charge-Account Clerk, 1991 WL 671715; *id*. 219.587-010 Parimutuel-ticker checker, 1991 WL 671989. Plaintiff contends that the ALJ failed to resolve the conflict between these DOT definitions and the VE testimony that these jobs only require occasional overhead reaching. *See Lockwood v. Comm'r of Soc. Sec. Admin*., 914 F.3d 87, 92 (2d Cir. 2019) ("Testimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring "reaching," then, creates at least an apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony.") Plaintiff further contends that that this unresolved conflict is a harmful error, because while the VE and the DOT agree that the third position, call-out operator, requires only occasional reaching, it does not exist in significant numbers in the national economy.[7] See DOT, 237.367-014 Call-out Operator, 1991 WL 672186.

Thus, Plaintiff argues the ALJ's reliance on the VE testimony falls short of the *Lockwood* standard. (Dkt. No. 9 at 15-21.) However, this argument is contradicted by the VE testimony. In particular, before responding to the ALJ's hypothetical RFC determination, the VE explained,

> . . . I'll give you primarily you know, desk type jobs that way that will eliminate the any more than occasional overhead reaching based on my experience and training. . .

(T. 50.) After the VE identified three representative jobs, the ALJ followed up on apparent

---

[7] The VE testified that there were 2,713 call-out operator jobs nationwide. (T. 50.) The combined total number of nationally available jobs for all three positions identified by the VE was 11,045. (T. 24, 50.) Courts have typically found a composite number of jobs exceeding 11,000 to be a significant number. *See Hamilton v. Comm'r of Soc. Sec*., 105 F. Supp. 3d 223, 230 (N.D.N.Y. 2015) (collecting cases).

conflicts:

> Q: All right, and is your testimony consistent with the DOT?

> A: Yeah, the occasional overhead reach is the only thing that's not consistent and that's based on my experience and my training.

(T. 50-51.)

Thus, this Court finds that the record developed by the ALJ satisfies the *Lockwood* requirements. [8] "The conflict was identified and described by the VE regarding the reaching issue, and [he] provided a plausible explanation." *See Jeanette S.U. v. Saul*, No. 3:18-CV-1045 (DNH/TWD), 2020 WL 1494168, at *11 (N.D.N.Y. March 11, 2020) (finding ALJ's reliance on VE testimony rather than DOT was supported by substantial evidence.) While Plaintiff contends that a more searching inquiry was required, the *Lockwood* court recognized that "[i]t may well be that the apparent conflict between [the VE's] testimony and the Dictionary is susceptible to easy resolution." *Lockwood*, 914 F.3d at 94. In *Lockwood*, the ALJ left the conflict unresolved, forcing the court to impermissibly "infer" the basis for the VE's testimony. *Id*. at 90. In this case, the VE testimony squarely addressed the issue of overhead reaching with reference to his practical knowledge of the specific job requirements.

Plaintiff cites a decision from the Western District of New York that remanded where the "VE offered no indication that he relied on job observation, research, or specific knowledge of the job" to resolve a conflict with the DOT. *See Matthew M. v. Comm'r of Soc. Sec*., No. 1:20-CV-1644 (DB), 2022 WL 3346949, at *4 (W.D.N.Y. Aug. 12, 2022). Here, the VE expressly connected his specific knowledge of the three representative "desk-type" jobs to his analysis of

---

[8] Plaintiff's non-attorney representative questioned the VE regarding the total number of jobs available but did not ask him any questions regarding conflicts with the DOT. (T. 52-53.)

each job's reaching requirements. (T. 50.) Thus, the ALJ's inquiry provides sufficient detail to satisfy *Lockwood*, consistent with *Matthew M. See Thomas K. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00673 (TPK), 2025 WL 484178, at *5 (W.D.N.Y. Feb. 13, 2025) (finding "vocational testimony to be sufficient when the expert indicated knowledge of how the jobs in question were performed and said, based on experience, that someone who had a particular physical limitation could do either all or some percentage of them."); *see also Kathryn D. v. Comm'r of Soc. Sec.*, No. 1:22-CV-31 (JJM), 2025 WL 2115487, at *4 (W.D.N.Y. July 29, 2025) (summarizing cases following same reasoning as *Thomas K.*, and noting that "[t]o the extent plaintiff had further questions or concerns about the basis of the vocational expert's testimony on this point, plaintiff's counsel could have explored the issue on cross-examination, as he did for other topics."); *Assudullah Q. v. Kijakazi*, 691 F. Supp. 3d 469, 495 (D. Conn. 2023) (finding ALJ was not obligated to inquire "when and where" VE observed representative occupations before relying on testimony that jobs required only occasional reaching).

Therefore, this Court finds the ALJ fulfilled his obligation to resolve the conflict between the VE's expert testimony and the DOT at step five, consistent with *Lockwood,* and finds no basis to recommend remand based on the ALJ's step five determination.[9]

**ACCORDINGLY**, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **DENIED**; and Plaintiff's complaint (Dkt. No. 1) be

---

[9] This Court recently applied the same reasoning to reject a similar *Lockwood* argument raised by Plaintiff's counsel in another case, *Joseph R. v. Comm'r of Soc. Sec.*, No. 5:24-CV-01065 (FJS/ML) (Dkt. No. 17.). Plaintiff's objection to that report-recommendation is currently pending before the District Court.

**DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    January 27, 2026
          Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge